# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BASSEM AL-TAMIMI,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-445 (TSC) |
| | ) | |
| **SHELDON ADELSON,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiffs claim Defendants committed war crimes, crimes against humanity, genocide, conspiracy, and trespass by seeking to expel all non-Jewish people from East Jerusalem, the West Bank, and the Gaza Strip. This case is on remand from the D.C. Circuit's decision that the court does not lack jurisdiction under the political question doctrine. Defendants have once again moved to dismiss, citing lack of subject matter jurisdiction, failure to state a claim, lack of personal jurisdiction, and improper service of process.

Having reviewed the record and the briefing, the court will GRANT Defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF Nos. 162, 164, and will DENY Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), ECF No. 166, as moot.

## I.     BACKGROUND

Fifty-three individuals— Palestinian-Americans and Palestinian nationals from East Jerusalem, the West Bank, and the Gaza Strip—and five Palestinian village councils initially sued more than one hundred Defendants in March 2016. *See* Compl., ECF No. 1. Over the years, most Defendants were dismissed. Plaintiffs categorize the remaining Defendants as seven

"Donor Defendants" (Norman Braman, Lawrence Ellison, Daniel Gilbert, John Hagee, Lev Leviev, Haim Saban, Irving Moskowitz Foundation), one "Settlement and Advocate/Promoter" Defendant (Elliot Abrams), eleven "Pro-Settlement Tax-Exempt Entity Defendants,"[1] one "Bank Defendant" (Valley National Bank, formerly Bank Leumi USA), and four "Construction/Support Firm Defendants" (G4S North America, RE/MAX LLC, Hewlett Packard Enterprise Co., and Motorola Solutions Inc.). *See* Am. Compl., ECF No. 77 at 47–77; Min. Order of Partial Dismissal, June 8, 2020 (dismissing several additional Defendants).

Plaintiffs allege that Donor Defendants "funneled millions of dollars through" Pro-Settlement Tax Exempt Entity Defendants and Bank Defendant to Israeli settlements. *Al-Tamimi v. Adelson*, 916 F.3d 1, 4 (D.C. Cir. 2019). The settlement leaders then used the financial assistance to hire staff to "train[] a militia of Israeli settlers to kill Palestinians and confiscate their property." *Id.* Plaintiffs also claim that Construction/Support Firm Defendants "destroyed property belonging to the plaintiff Palestinians and built settlements in its place." *Id.* "All defendants knew their conduct would result in the mass killings of Palestinians residing in the disputed territory." *Id.*

The Amended Complaint includes four claims that: (1) Defendants Abrams, Hagee, Leviev, the Irving Moskowitz Foundation, and Pro-Settlement Tax-Exempt Entity Defendants conspired to remove Palestinians from the disputed territory (Count I); (2) all Defendants committed or sponsored genocide and other war crimes in violation of the law of nations (Count II); (3) Donor Defendants, Defendant Abrams, Bank Defendant, G4S North America, RE/MAX,

---

[1] American Friends of Ariel, American Friends of Bet El Yeshiva, American Friends of Har Homa, Christian Friends of Israeli Communities, Efrat Development Foundation, Falic Family Foundation, Friends of Israel Defense Forces, Gush Etzion Foundation, Honenu National Legal Defense Organization, the Hebron Fund, and Jewish National Fund. Am. Compl., ECF No. 77 at 54–63.

LLC, and Jewish National Fund ("JNF") aided and abetted genocide and other war crimes (Count III); and (4) Bank Defendant and Construction/Support Firm Defendants trespassed on private property (Count IV). Am. Compl. at 103, 145, 180, 184; *Al-Tamimi*, 916 F.3d at 4–5.

The court initially dismissed the case for lack of subject matter jurisdiction, concluding that it raised nonjusticiable political questions. *See Al-Tamimi v. Adelson*, 264 F. Supp. 3d 69, 81 (D.D.C. 2017); Order, ECF No. 121. The D.C. Circuit reversed, holding that the only nonjusticiable question is "who has sovereignty over the disputed territory," but because that question is extricable from the rest of the suit, the political question doctrine does not bar any of Plaintiffs' claims. *Al-Tamimi*, 916 F.3d at 13–14 (emphasis omitted).

On remand, Defendants again moved to dismiss Plaintiffs' claims for lack of subject matter jurisdiction, failure to state a claim, lack of personal jurisdiction, and improper service of process (ECF Nos. 162, 164, 166).

## II.     LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant to move to dismiss any claim for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Key aspects of subject matter jurisdiction are Article III standing and federal question, diversity, or supplemental jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); 28 U.S.C. § 1331; *id.* § 1332(a); *id.* § 1367(a). To survive a Rule 12(b)(1) motion, the plaintiff must establish that the court has subject matter jurisdiction as to each claim, not just one. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

In assessing a motion to dismiss, the court must "accept all of the factual allegations in the complaint as true," *Jerome Stevens Pharms. Inc. v. FDA*, 402 F.3d 1249, 1250 (D.C. Cir. 2005) (citation omitted), and construe the complaint "in the light most favorable to" the non-

moving party, *Navab-Safavi v. Glassman*, 637 F.3d 311, 382 (D.C. Cir. 2011).  That said, because the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," the "factual allegations in the complaint . . . will bear closer scrutiny [than those allegations would] in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quotation marks and citation omitted).

**B.      Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Statutory standing—the "inquiry into whether the statute at issue conferred a 'cause of action' encompassing 'a particular plaintiff's claim'"—is fundamentally "a merits issue" to be resolved under Rule 12(b)(6).  *See United States v. Emor*, 785 F.3d 671, 677 (D.C. Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

While the court presumes the truth of the complaint's factual allegations under Rule 12(b)(6) as well, it does not "accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint." *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (citation omitted).

# III.    ANALYSIS

## A.    Article III Standing

### i.    Establishing Article III standing

To show standing, a plaintiff must have (i) an "injury in fact," that is (ii) "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and that (iii) is "likely" to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (formatting modified). Each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561 (citation omitted). At the motion to dismiss stage, that means "the complaint must contain 'sufficient factual matter, accepted as true,' to support an inference of standing 'that is plausible on its face.'" *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). General factual allegations "may suffice" because the court presumes "that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citation omitted).

"Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (citation omitted). Thus, the plaintiff must have a "personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). The injury in fact element ensures the plaintiff's personal stake by requiring the plaintiff to identify "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560.

The causation or traceability element requires that the plaintiff sues a party bearing some responsibility for its injury. *See id.* at 560–61. Even where third parties are directly responsible

for a plaintiff's injuries, the plaintiff may have standing if their allegations allow a "reasonable inference" that the defendant was "at least partially to blame" for the harm the third parties caused them. *See In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 60 (D.C. Cir. 2019) ("*Office of Personnel Management*"). In *Office of Personnel Management*, for example, the D.C. Circuit concluded that plaintiffs sufficiently pleaded that they were at an increased risk of future identity theft traceable to a data breach caused by defendants. *Id.* at 60–61. Plaintiffs alleged that defendants failed to properly secure their login credentials, which the Court concluded was a substantial factor in allowing third-party hackers to access plaintiffs' personal information and enable them to steal plaintiffs' identities and misuse their personal information. *Id.*

By contrast, the D.C. Circuit found no plausible allegations of traceability in *Kareem v. Haspel*, 986 F.3d 859 (D.C. Cir. 2021), where plaintiff was attempting to link the United States to specific airstrikes in Syria even though there were several actors involved in Syrian airstrikes at the time. Plaintiff asserted that the United States "conducts lethal strikes," *id.* at 867, and noted that one strike was conducted with "what appeared to be a Hellfire missile"—a type of missile that the United States and many of its allies use, *id.* at 868. The Court concluded that this allegation was "plainly insufficient to establish plausibly that, in a war-torn area of Syria in the summer of 2016, the United States was responsible for five airstrikes in Kareem's vicinity and that Kareem was the specific target of those airstrikes." *Id.* at 867. Unlike in *Office of Personnel Management*, any number of other allies that use Hellfire missiles may have been responsible for the airstrikes. *See id.* And none of Kareem's allegations indicated how or why Kareem may have been the intended target. *Id.*

Finally, the redressability element ensures that it is "likely" the plaintiff will "obtain relief that directly redresses the injury suffered" if the court rules in their favor. *Reed v. Goertz*, 143 S. Ct. 955, 960 (2023) (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)). Causation and redressability are "closely related" yet distinct: "causation focuses on the 'connection between the assertedly unlawful conduct and the alleged injury' whereas redressability focuses on the connection between the alleged injury and the judicial relief requested.'" *West v. Lynch*, 845 F.3d 1228, 1235–36 (D.C. Cir. 2017) (citation omitted).

In a case with multiple plaintiffs, like this one, so long as "standing can be shown for at least one plaintiff," the court "need not consider the standing of the other plaintiffs to raise the claim." *Del. Dep't of Nat. Res. & Env't Control v. EPA*, 785 F.3d 1, 8 (D.C. Cir. 2015) (quoting *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996)). But standing "is not dispensed in gross." *Town of Chester*, 581 U.S. at 439 (formatting modified; citations omitted). Rather, "a plaintiff must demonstrate standing for each claim." *Id.* (citation omitted). Thus, Plaintiffs need to show that at least one of them has Article III standing for each of their four claims.

### ii. *Plaintiffs have Article III standing*

Taking Plaintiff Al-Tamimi as an example, the court finds that Plaintiffs have established Article III standing. Injury and redress are straightforward. Al-Tamimi claims that he was arrested and incarcerated "at least ten times," "he was tortured on an almost daily basis;" and suffered permanent bodily injury. Am Compl. Ex. C at 10–11; *see* Am. Compl. at 46, 60. And Plaintiffs seek to redress these harms with damages that would compensate Al-Tamimi for "pain and suffering" resulting from continuous arrests and incarceration and provide him with

"psychological counseling services" which would assist him in recovering from those traumatic experiences. Am. Compl. at 143–44.

Causation presents a closer question, but Plaintiffs prevail. Exhibit C to the Amended Complaint details the causal chain and relevant actors involved in the harms Al-Tamimi experienced. *See* Am. Compl. Ex. C at 10. Specifically, it claims that several Defendants contributed funds to Friends of Israeli Defense Forces, Bank Defendant, Bank Hapoalim, Honenu National Legal Defense Organization, One Israel Fund, and JNF. *Id.* Those funds were then received by organizations including the Israeli Defense Forces ("IDF"). *Id.* IDF, Construction/Support Firm Defendants, and armed settlers used those funds to arrest and incarcerate Al-Tamimi. *Id.* In detailing the harm, Exhibit C further explains which non-defendants were involved in which harms Al-Tamimi suffered, and states that the "activity was financed by" Bank Defendant and JNF. *Id.* Indeed, Exhibit C totals 50 pages and details a similar causal chain for each Plaintiff.

The allegations in the Amended Complaint are more plausible than the allegation in *Kareem*. The Amended Complaint purports to draw connections between entities that outwardly support Israeli forces and have donated money to them in the past; which entities receive that money; and then the entities and individuals who receive those funds and use them to inflict harm on Plaintiffs. At the pleading stage, these allegations are plausible, and Al-Tamimi's injuries are traceable to Defendants.

Defendants contend that, since the ultimate actors are third parties such as Israeli settlers, "Plaintiffs must demonstrate that the Defendants' financial or commercial support *caused*" the third parties' actions. Mot. to Dismiss, ECF No. 164 at 47–49 (emphasis in original); *accord* Reply, ECF No. 181 at 16. That is not the appropriate legal standard. Plaintiffs need only

plausibly plead that Defendants' actions were a *substantial factor* in the harms they suffered. *Office of Personnel Management*, 928 F.3d at 60.

Defendants also repeatedly argue that some of the allegations regarding other Plaintiffs' standing are insufficient.  Mot. to Dismiss, ECF No. 164 at 44–46; Reply, ECF No. 181 at 15. But, as noted above, *supra* at 7, Article III does not require each of the fifty-three Plaintiffs to establish standing; only one Plaintiff need do so, *Del. Dep't of Nat. Res. & Env't Control*, 785 F.3d at 8 (citation omitted).  Plaintiff Al-Tamimi has done just that.

**B.      Federal Question Jurisdiction**

Plaintiffs rely primarily on federal questions to establish subject matter jurisdiction but cite different statutes to create jurisdiction depending on the plaintiff's country of citizenship. *See* Am. Compl. at 32–34.  Foreign Plaintiffs cite the Alien Torts Statute, 28 U.S.C. § 1350 ("ATS"), and U.S. Plaintiffs cite the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992), note following 28 U.S.C. § 1350.  *Id.*  All Plaintiffs cite criminal and civil forfeiture statutes—18 U.S.C. §§ 371, 981—in support of jurisdiction.  *Id.* at 36–37.

Naming a federal statute in a complaint cannot confer federal question jurisdiction if its mention is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation omitted).  Applying that standard, the court finds that neither the cited criminal and civil forfeiture statutes, nor the TVPA, create a federal controversy.

### i. Criminal and civil forfeiture statutes

Plaintiffs claim federal question jurisdiction because Defendants allegedly violated criminal and civil forfeiture statutes, namely 18 U.S.C. §§ 371, 981. Am. Compl. at 36–37. These statutes, however, do not create private causes of action. *See, e.g., Keyter v. Bush*, No. 04-5324, 2005 WL 375623, at *1 (D.C. Cir. 2005) (explaining that criminal statutes "do not convey a private right of action"). Section 371 provides for criminal punishment "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States . . . and one or more of such persons do any act to effect the object of the conspiracy." 18 U.S.C. § 371. And § 981 enables the Attorney General, the Secretary of the Treasury, and the United States Postal Service to seize certain property subject to forfeiture to the United States. *Id.* § 981(a)–(b). Because neither statute creates a private of action, Plaintiffs cannot rely on them to confer federal question jurisdiction. *See e.g., Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 46 (D.D.C. 2017), *aff'd*, No. 17-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018) (dismissing criminal statute-based claims in civil action for lack of subject matter jurisdiction).

### ii. TVPA

The TVPA—invoked by U.S. Plaintiffs—also does not confer federal question jurisdiction. Plaintiffs merely state that the TVPA "is invoked on behalf of the U.S. citizen plaintiffs against all Defendants in Count II, similar to and on the same bases as the ATS invoked on behalf of the non-U.S. citizen Plaintiffs above." Am. Compl. at 33–34. That reference is in the jurisdiction section only—there is no mention of the TVPA in Count II itself. Nor could there be. On its face, the TVPA is limited to "[a]n individual" defendant acting under "color of law of any foreign nation." 106 Stat. 73. The Supreme Court has held that the term "individual"

in the TVPA refers only to natural persons. *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 45455 (2012). Yet, most Defendants are organizations. Moreover, the Amended Complaint makes no state action allegations regarding any Defendant. Plaintiffs' attempt to avail themselves of federal question jurisdiction by invoking the TVPA to try to claim federal jurisdiction is insufficient to create a federal controversy.

**C.      Diversity Jurisdiction**

Finally, Plaintiffs argue that the court has diversity jurisdiction. Am. Compl. at 35. To have diversity jurisdiction, a plaintiff must establish diversity of citizenship and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). Diversity of citizenship is assessed at the time of filing, *see Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957), and requires "complete diversity," which means that no plaintiff and defendant can be from the same state, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989). Plaintiffs cannot establish complete diversity because, for example, Plaintiff Ali Ali and Defendant Ellison both resided in California when the initial Complaint was filed. *See* Am. Compl. at 7, 48. Thus, the court lacks diversity jurisdiction.

**D.      Statutory Standing**

*i.      Pleading statutory standing under the ATS*

The ATS grants federal courts original jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. "The ATS was intended to promote harmony in international relations by ensuring foreign plaintiffs a remedy for international-law violations in circumstances where the absence of such a remedy might provoke foreign nations to hold the United States accountable." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1406 (2018).

There are two important limitations to the ATS. First, plaintiffs cannot bring ATS actions against foreign corporations. *Id.* at 1407. The Supreme Court in *Jesner* held that allowing suits against foreign corporations would create separation of powers concerns, inconsistency between the ATS and the TVPA—which limits liability to individuals—and would encourage plaintiffs to ignore human perpetrators in favor of concentrating on multinational corporate entities. *Id.* at 1403–06.

Second, foreign plaintiffs cannot invoke the ATS "for violations of the law of nations occurring outside the United States." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013). Thus, to show statutory jurisdiction under the ATS, a plaintiff must establish that "the conduct relevant to the statute's focus occurred in the United States." *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1936 (2021) (quoting *RJR Nabisco*, *Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016)) (formatting modified).

Domestic "allegations of general corporate activity" are insufficient to create statutory standing. *Id.* at 1936–37. In *Nestlé*, for example, the plaintiffs alleged that Nestlé purchased cocoa from farms in the Ivory Coast and provided "technical and financial resources—such as training, fertilizer, tools, and cash," to those farms, which "aided and abetted child slavery." *Id.* at 1935. To establish a domestic connection, the plaintiffs alleged that "all major operational decisions" by Nestlé occurred in the United States, including originating financial agreements. *Id.* at 1935, 1937; *see Doe v. Nestlé*, *S.A.*, 906 F.3d 1120, 1126 (9th Cir. 2018), *rev'd sub nom. Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021). But the Supreme Court held that those allegations were insufficient to show that "the conduct relevant to the statute's focus occurred in the United States" because they did "not draw a sufficient connection between the cause of action," which was aiding and abetting forced labor overseas, and the alleged domestic

conduct—making operational decisions and originating financial agreements. *Nestlé*, 141 S. Ct. at 1935–37.

### ii. Foreign Plaintiffs lack statutory standing

Foreign Plaintiffs cannot establish statutory standing under the ATS. Even assuming Plaintiffs can maintain ATS claims against domestic subsidiaries of foreign corporations,[2] Plaintiffs have not alleged a sufficient nexus with the United States. In Count II, Plaintiffs allege that Defendants committed war crimes by promoting and facilitating ethnic cleansing, arms trafficking, malicious wounding, and property destruction. Am. Compl. at 145–46. Regarding domestic conduct, Plaintiffs argue that Defendants "encouraged, promoted, or financed a broad public relations campaign in the United States" by wiring money to each other and to entities in Israel; filing tax forms and hosted fundraising events; advocating for Israeli settlements in the disputed territory; marketing homes for sale in the disputed territories; and lobbying. *Id.* at 22, 35, 39–40, 42–45, 48–78, 112.

Plaintiffs' domestic connections are no more convincing than those the Supreme Court rejected in *Nestlé*. The closest connection Plaintiffs allege is that Defendants wired money from the United States that they used to allegedly finance war crimes. But in *Nestlé,* the key operational decisions the company made in aiding and abetting child labor were made in the United States *and* financial agreements originated in the United States, and the Court nonetheless

---

[2] At the time these motions were briefed, Bank Leumi USA, a domestic subsidiary of a foreign corporation, was the Bank Defendant. But in April 2022, Bank Leumi USA informed the court that it had fully merged into Valley National Bank, with Valley National Bank as the surviving entity. Notice of Merger, ECF No. 197. In its Disclosure of Corporate Affiliations, Valley National Bank confirmed that Bank Leumi Le-Israel B.M., a foreign corporation, is a parent corporation of Valley National Bank. Disclosure of Corporate Affiliations and Financial Interests, ECF No. 198. Accordingly, the court assumes without deciding that Valley National Bank is a domestic subsidiary of a foreign corporation.

found them insufficient. 141 S. Ct. at 1935–37. That is not the case here, and, lacking a domestic connection, Foreign Plaintiffs cannot bring an ATS claim against any Defendant.

### E. Supplemental Jurisdiction

Finally, Plaintiffs assert supplemental jurisdiction for Counts I and IV (civil conspiracy and aggravated trespass). Am. Compl. at 37. But supplemental jurisdiction is by definition *supplemental*—it requires that other claims in the action have federal question or diversity jurisdiction. *See, e.g.*, *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1263 (D.C. Cir. 1995). Here, the court has already determined that it lacks federal question and diversity jurisdiction over Counts I, III, and IV, and Count II must be dismissed. Therefore, it will not exercise supplemental jurisdiction over Plaintiffs' local law claims.

## IV. CONCLUSION

For the reasons stated, the court will GRANT Defendants' Motion to Dismiss Counts I through III Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 162, and Defendants' Motion to Dismiss the Amended Complaint Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 164. Accordingly, the court will DENY Defendants' Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), ECF No. 166, as moot. An Order will accompany this Memorandum Opinion.

Date: February 23, 2024

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge